UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

PAUL A. SCHLICHTING,

           Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

**REPORT AND RECOMMENDATION**

11-CV-302
(GTS/VEB)

---

## I. INTRODUCTION

In December of 2007, Plaintiff Paul A. Schlichting applied for supplemental security income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that he had been unable to work since December of 2004 due to various psychological and emotional impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff commenced this action by and through his attorney, Steven R. Dolson, Esq., seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for SSI benefits and DIB under the Social Security Act on December 11, 2007, alleging disability beginning on December 12, 2004. (T at 93-95, 96-104).[1] The claims were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held in Syracuse, New York on September 14, 2009, before ALJ John P. Ramos. (T at 21). Plaintiff, represented by Attorney Dolson, appeared and testified. (T at 25-41). On October 28, 2009, ALJ Ramos issued a written decision finding that Plaintiff was not disabled under the Social Security Act. (T at 12-20). The ALJ's decision became the Commissioner's final decision on January 26, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

Plaintiff, by and through his attorney, timely commenced this action on March 17, 2011. (Docket No. 1). The Commissioner interposed an Answer on August 25, 2011. (Docket No. 9). Plaintiff filed a Brief in support of his action on October 7, 2011. (Docket No. 15). Defendant filed a Brief in opposition on November 4, 2011. (Docket No. 16).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted, Plaintiff's motion be denied, and that this case be dismissed.

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 9).

[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

### III. DISCUSSION

**A.      Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

3

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

146 n. 5; <u>Ferraris v. Heckler</u>, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.     Analysis**

    **1.     Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2009.  The ALJ found that Plaintiff had not engaged in substantial gainful activity since December 10, 2004, the alleged onset date.  (T at 14).

The ALJ concluded that Plaintiff had the following impairments, which the ALJ considered "severe," as defined under the Act: alcoholism, anxiety, and depression. (T at 14-15).  However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 15-16).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels. (T at 17).  The ALJ determined that Plaintiff could (on a sustained basis) understand, remember, and carry out simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting. (T at 17-19).  However, the ALJ found that Plaintiff could

not perform his past relevant work as a cost estimator and draftsman, because those jobs required concentration beyond Plaintiff's residual functional capacity. (T at 19).

Considering Plaintiff's age (44 years old as of the alleged onset date), education (high school), work experience, and residual functional capacity, the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (T at 19). As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, from December 1, 2004 (the alleged onset date) through October 28, 2009 (the date of decision), and was therefore not entitled to benefits. (T at 20). As noted above, the ALJ's decision became the Commissioner's final decision on January 26, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

### 2. Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed. Plaintiff offers four (4) principal arguments in support of his position. First, Plaintiff contends that the ALJ did not properly apply the treating physician's rule. Second, Plaintiff challenges the ALJ's credibility determination. Third, Plaintiff argues that the ALJ improperly failed to consider a Global Functioning Assessment ("GAF") score. Fourth, Plaintiff asserts that the ALJ mischaracterized the nature of his alcohol counseling. This Court will address each argument in turn.

#### a. Treating Physician's Rule

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. 20 C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir.1998).

In the present case, Dr. Catherine Keating, Plaintiff's treating family care doctor, opined that Plaintiff had marked restrictions in his activities of daily living; marked limitations with regard to maintaining social functioning; deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner; repeated episodes of deterioration or decompensation in work or work-like settings; and a complete inability to function independently outside the area of his home due to panic attacks. (T at 286-87).

The ALJ found Dr. Keating's assessment to be of "little evidentiary value" and

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

7

afforded it "little weight" when determining Plaintiff's residual functional capacity. (T at 19). For the reasons that follow, this Court finds the ALJ's assessment to be consistent with applicable law and supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401.

First, a treating physician's opinion is entitled to greater weight when he or she is a specialist with regard to the area at issue and where he or she has an extensive treating relationship with the claimant. 20 C.F.R. § 404.1527 (d)(2) & (5). Here, Dr. Keating is a family physician (as opposed to a psychiatrist or psychologist) and her treating relationship was limited to four visits in 2007 and two visits in 2009. (T at 204-211, 289-293). In addition, it appears that Plaintiff was seen exclusively by a nurse practitioner (as opposed to Dr. Keating) on each of those occasions. (T at 204-211, 289-293).

Second, when considering the "supportability" of a treating physician's opinion, the ALJ asks whether the opinion is supported by "medical signs and laboratory findings." In addition, the ALJ considers the adequacy of the physician's explanation for his or her opinion. 20 C.F.R. § 404.1527 (d)(3)("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Here, Dr. Keating's assessment was not supported by any medical signs or laboratory findings. In fact, the treatment notes prepared by the nurse practitioner working in collaboration with Dr. Keating referenced Plaintiff's problems with depression, anxiety, and alcohol, but generally described Plaintiff's condition as "stable" and "good" (T at 205, 206, 209, 210).[5]

---

[5] One note appears to indicate that Plaintiff was working 15-20 hours (T at 206), which is consistent with Plaintiff's testimony that he worked 10 to 15 hours per month drafting technical documents. (T at 30-31).

In addition, the treating physician's opinion was internally inconsistent. For example, Dr. Keating assessed that Plaintiff had a complete inability to function independently outside of his home due to panic attacks. (T at 287). However, she also opined that Plaintiff was not significantly impaired with regard to his ability to sustain an ordinary routine without special supervision, make simple work-related decisions, and respond appropriately to changes in the work setting outside the home. (T at 287-88). Dr. Keating found a marked limitation in terms of social functioning (T at 286), but assessed no significant impairment with respect to Plaintiff's ability to get along with peers without distracting them or exhibiting behavioral extremes and his ability to maintain socially appropriate behavior. (T at 288). Dr. Keating concluded that Plaintiff had a marked impairment with regard to performing activities within a schedule; but no significant impairment in terms of sustaining an ordinary routine without special supervision or carrying out detailed instructions. (T at 287). These serious inconsistencies reasonably caused the ALJ to question the supportability of Dr. Keating's conclusions.

Third, additional support for the ALJ's decision to discount Dr. Keating's opinion is found in the assessments rendered by the consultative examiner and State Agency review consultant. Dr. Noia, the consultative examiner, found Plaintiff capable of understanding and following simple instructions and directions; performing simple and some complex tasks with supervision and independently; maintaining attention and concentration for tasks; learning new tasks; making appropriate decisions; and interacting moderately well with others. (T at 219). Dr. Noia did note a history of difficulties managing stress, but found that Plaintiff could attend to a routine and maintain a schedule. (T at 219).

Dr. Hochberg, the State Agency review consultant, reviewed the medical record and

9

assessed a mild degree of restriction with regard to activities of daily living and social functioning, along with moderate difficulties in terms of maintaining concentration, persistence, or pace. (T at 231). Dr. Hochberg and Dr. Keating (the treating physician) reached the same conclusion regarding several material aspects of Plaintiff's residual functional capacity. For example, both found that Plaintiff was not significantly limited in terms of his ability to remember locations and work-like procedures; understand, remember, and carry out very short and simple directions; sustain an ordinary routine without special supervision; and make simple work-related decisions. (T at 235-36, 287).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Moreover, "[c]onflicts in evidence . . . are for the Commissioner to resolve." White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). Where, as here, the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id. (citing Veino v. Barnhart, 312 F.3d at 586).

Plaintiff argues that the ALJ should have re-contacted Dr. Keating before discounting

her opinion. However, the administrative record already included the treatment notes from all of Plaintiff's visits (totaling six visits over the course of three years) to Dr. Keating's office (T at 204-211, 289-293). In addition, the ALJ held the record open following the administrative hearing to provide for the submission of additional evidence from Dr. Keating. (T at 24). In addition to the evidence from Dr. Keating and her office, the record includes Dr. Noia's consultative examination report, the State Agency review consultant's assessment, records from Plaintiff's inpatient hospitalizations, and treatment notes from Plaintiff's alcohol counseling.

While an "ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record, . . . where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir.1999).

Indeed, the ALJ's responsibility to resolve conflicts in the evidence would be "rendered nugatory if, whenever a treating physician's stated opinion is found to be unsupported by the record, the ALJ were required to summon that physician to conform his [or her] opinion to the evidence." Rebull v. Massanari, 240 F. Supp.2d 265, 273 (S.D.N.Y.2002); see also Harvey v. Astrue, 05-CV-1094, 2008 WL 4517809, at *8 (N.D.N.Y. Sep. 29, 2008)("An ALJ need not seek further explanation from treating physicians each time there is an inconsistency in medical opinions.").

Accordingly, this Court finds that the ALJ was not required to re-contact Dr. Keating, that the ALJ properly applied the treating physician's rule, and that the ALJ's decision to discount Dr. Keating's opinion was supported by substantial evidence.

**b.      Credibility**

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified that he lacks energy and has trouble sleeping when depressed and has difficulty interacting with others when anxious. (T at 25). Plaintiff stated that his spells of anxiety occur several times per week, with severity such that he cannot function or interact with others. (T at 25). Plaintiff does have a consistent work record (T at 144) and was therefore entitled to enhanced credibility. See Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983)("A claimant with a good work record is entitled to substantial

credibility when claiming an inability to work because of a disability.").

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limited effects of those symptoms were not entirely credible. (T at 17-18). This Court finds the ALJ's credibility assessment consistent with applicable law and supported by substantial evidence.

Plaintiff's testimony concerning the impact of his episodes of anxiety on his ability to interact with others was contracted by Dr. Noia, the consultative examiner, who opined that Plaintiff could "relate to and interact moderately well with others." (T at 219). The State Agency Review consultant reached a similar conclusion. (T at 231). Plaintiff's treating physician reached contradictory conclusions on this point, finding on the one hand that Plaintiff's ability to interact with the general public was markedly impaired; but also concluding that Plaintiff was not significantly impaired with regard to getting along with peers and co-workers, accepting instruction and criticism from supervisors, and maintaining socially appropriate behavior. (T at 287-88).

Plaintiff also testified to a variety of activities of daily living that involved at least some social interaction and the ability to maintain a regular schedule (including part-time employment, maintaining family relationships, and attendance at Alcoholics Anonymous meetings) (T at 30-31, 34, 136). The ALJ reasonably concluded that these activities were inconsistent with Plaintiff's allegations of disabling symptoms.

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted).

If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

In further support of his decision to discount Plaintiff's credibility, the ALJ noted that Plaintiff treated his mental health problems with prescription medication and attended AA meetings for his alcoholism, but did not seek "out-patient mental health treatment other than attendance at counseling for alcohol abuse." (T at 18). Plaintiff argues that the ALJ erred because his alcohol abuse counseling, which delves into the underlying problems giving rise to Plaintiff's alcohol dependence should have been considered a form of mental health treatment. As a threshold matter, to the extent Plaintiff argues that the ALJ did not consider alcohol abuse counseling a form of mental health treatment, that argument is inconsistent with the ALJ's actual language. Specifically, the ALJ found that Plaintiff did not seek "out-patient mental health treatment other than attendance at counseling for alcohol abuse," (T at 18)(emphasis added), indicating that he did consider the counseling at least some form of mental health treatment.

The Court does find that the ALJ erred in considering Plaintiff's failure to seek out-patient mental health treatment other than alcohol abuse counseling. SSR 96-7p provides, in relevant part, that a claimant's "statements may be less credible if the level or frequency

of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed." Under that ruling, however, an ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Id.  The record in this case does not indicate that the ALJ considered any explanation Plaintiff might have for failing to seek other treatment.  Further, faulting a person with diagnosed mental illness for failing to pursue mental health treatment is a "questionable practice." See Day v. Astrue, No. 07 CV 157, 2008 WL 63285, at *5 n.6 (E.D.N.Y. Jan. 3, 2008)(noting that it "is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation")(quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir.1996) and citing Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir.1989)).

     Nevertheless, the ALJ's error was harmless.  The reference to Plaintiff's failure to pursue treatment other than alcohol counseling was only part of the ALJ's credibility assessment.  The overall decision to discount Plaintiff's allegations is supported by substantial evidence even excluding consideration of the level of treatment.  As outlined above, Plaintiff's testimony was inconsistent (in part) with the opinions of his treating physician, the consultative examiner, and the State Agency review consultant, and was largely not supported by contemporaneous treatment notes or clinical findings.  Accordingly, the ALJ's error with regard to Plaintiff's treatment level was harmless and does not provide a basis for disturbing the decision. See Duvergel v. Apfel, No. 99 Civ. 4614, 2000 WL 328593, at *11 (S.D.N.Y. Mar.29, 2002); Walzer v. Chater, 93 Civ. 6240, 1995

WL 791963 at *9 (S.D.N.Y. Sept.26, 1995) (finding that ALJ's failure to discuss a treating physician's report was harmless error where consideration of report would not have changed outcome); see also Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1996) (holding that harmless error rule applies to review of denial of disability benefits).

In conclusion, the Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984).  The ALJ's credibility determination should therefore be upheld.

### c.  GAF Score

During a November 2006 hospitalization, Plaintiff was assigned a Global Assessment Functioning ("GAF") score of 50. (T at 189).  "A GAF range of 41-50 indicates that the individual has a 'serious impairment in one of the following: social, occupational, or school functioning.'" Pollard v. Halter, 377 F.3d 183, 186 n.1 (2d Cir. 2004).  Plaintiff correctly notes that the ALJ did not expressly reference this GAF score in his decision.

However, the failure to reference this single score, which was assessed when Plaintiff was hospitalized due to a serious alcohol abuse incident, does not amount to reversible error.  The ALJ is not required to specifically discuss each piece of evidence considered. Barringer v. Comm'r, 358 F.Supp.2d 67, 78-79 (N.D.N.Y. 2005) (noting that an ALJ's failure to cite specific evidence does not mean it was not considered) (citing Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)). Moreover, although the ALJ may rely on a GAF score, the failure to reference a single such score, without more, is not a ground of remand. See Parker v. Comm'r of Social Security, No. 10–CV–1952011 WL 1838981, at *6 (D. Vt.

May 13, 2011)(citing Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 511(6th Cir.2006) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score.")).  Lastly, the ALJ's overall RFC assessment is supported by substantial evidence (as outlined above), including the consultative examiner's report and Plaintiff's admissions concerning his activities of daily living.  As such, this Court finds no reversible error with regard to the ALJ's failure to discuss the GAF score.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. The ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers, the consultative examiners, and the non-examining consultants, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

        Respectfully submitted,

_____
Victor E. Bianchini
United States Magistrate Judge

Dated:   July 17, 2012

      Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

July 17, 2012

Victor E. Bianchini
United States Magistrate Judge